**Not for Publication**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **EMMANUEL MERVILUS,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**UNION COUNTY, et al.,**<br><br>**Defendants.** | **Civil Action No. 14-7470 (ES) (MAH)**<br><br>**MEMORANDUM** |

**SALAS, DISTRICT JUDGE**

Pending before the Court is Defendants Union County, John Kaminskas, and Daniel Vaniska's[1] motion to dismiss Plaintiff Emmanuel Mervilus's Amended Complaint (D.E. No. 77, Am. Compl.) under Federal Rule of Civil Procedure 12(b)(6). (D.E. No. 100). The Court has considered the parties' submissions in support of and in opposition to the Union Defendants' motion and decides the matter without oral argument under Federal Rule of Civil Procedure 78(b). For the following reasons, the Union Defendants' motion is DENIED.

## I. Background

Mervilus brings this action after spending nearly four years in prison for a crime he did not commit. (Am. Compl. at 2). In 2006, Mervilus was arrested and charged with first degree robbery (N.J.S.A. § 2C:15-1), aggravated assault (N.J.S.A. § 2C:12-1(b)), and possession of a weapon (N.J.S.A. § 2C:39-4(d)). (*Id.* ¶ 14). Union's theory of the case was that Mervilus held a man from

---

[1] The Court will refer to Defendant Union County as "Union," Defendants Kaminskas and Vaniska together as the "Individual Union Defendants," and Union and the Individual Union Defendants together as the "Union Defendants."

behind while someone else robbed and stabbed the man. (*Id.* ¶ 15, 41). Mervilus pleaded not guilty to all the charges against him and stipulated to a polygraph examination. (*Id.* ¶ 14, 18).

Mervilus alleges (among other things) that the polygraph examination he took—conducted by Kaminskas—was unlawful, deprived him of his rights, and enabled Union to obtain a wrongful conviction. (*See id.* at 12). Mervilus's allegations relating to Kaminskas's polygraph exam are comprehensive and specific. (*See, e.g., id.* ¶¶ 52-155). For example, Mervilus alleges that Kaminskas misrepresented to him the exam's accuracy and truth-telling capabilities and asked numerous improper questions, which skewed his results. (*See, e.g., id.* ¶¶ 87-93, 108-10, 114). Mervilus also alleges that Kaminskas used improper control questions and falsely labeled some of his questions, which caused a false result. (*See id.* ¶¶ 115-20). These are just some of the many allegations Mervilus makes about his polygraph examination.

In February 2011, after Mervilus had spent over three years in prison, the New Jersey Appellate Division reversed his conviction, holding that "improper polygraph evidence was prejudicial error warranting reversal." (*Id.* ¶ 32) (citing *State v. Mervilus*, 418 N.J. Super. 138, 147 (N.J. Super. Ct. App. Civ. 2011)). Following a re-trial two years later, a jury acquitted Mervilus of all charges. (*Id.* ¶ 39). The jury deliberated for roughly thirty minutes. (*Id.*).

Mervilus alleges that Union has a history of using improper polygraph examinations and testimony that result in wrongful convictions. (*Id.* ¶ 127). Mervilus also alleges that Kaminskas in particular has caused other reversals in Union County because of his improper polygraph examinations and testimony. (*Id.* ¶¶ 127-31) (citing *State v. A.O.*, 297 N.J. Super. 8 (N.J. Super. Ct. App. Div. 27, 2007), *aff'd* 198 N.J. 69 (2009) and *State v. Brown*, No. A-5662-01T4, 2005 N.J. Super. Unpub. LEXIS 739, at *27 (N.J. Sup. Ct. App. Div. Sept. 21, 2005)). Mervilus adds that, "because of the significant hurdles inmates face when trying to reverse convictions, there may be

many others who fell victim to the same wrongdoings but were unable to reverse their convictions." (*Id.* ¶ 133).

As a result, Mervilus alleges that Union and Police Chief Vaniska "knew of the improper polygraph-related customs, policies and practices that were used to convict Mervilus" but "did nothing to stop it." (*Id.* ¶ 125). Specifically, Mervilus alleges that there was a custom, policy and practice in place designed to (a) "get the accused to stipulate to a polygraph examination"; (b) "conduct the polygraph exam inappropriately by misinforming the examinee about the accuracy of the exam, using confusing questions, compound questions, questions that assumed guilt, follow-up questions, [and] wrongly marking relevant questions as control questions"; (c) "conduct trial without a N.J.R.E. 104 hearing"; (d) "present false testimony designed to convince the jury that polygraphs are infallible"; and (e) "present improper polygraph testimony that champions to the jury that the polygrapher believes the accused is guilty in order to inappropriately sway the jury to convict the accused." (*Id.* ¶ 126).

Mervilus asserts the following causes of action against the Union Defendants:

- Count 1: Due Process Claim under 42 U.S.C. § 1983 Related to Unlawful Polygraph Tactics against Kaminskas;
- Count 2: *Monell* Claim under 42 U.S.C. § 1983 for the Unconstitutional Custom, Policy and Practice and the Failure to Supervise and Train Related to Unlawful Polygraph Tactics against Union and Police Chief Vaniska;
- Count 3: Failure to Supervise and Train Claim under 42 U.S.C. § 1983 for the Unconstitutional Custom, Policy and Practice Related to Unlawful Polygraph Tactics against Union and Police Chief Vaniska;
- Count 4: Due Process Claim under the New Jersey Civil Rights Act Related to Unlawful Polygraph Tactics against Kaminskas;
- Count 5: *Monell* Claim under the New Jersey Civil Rights Act for the Unconstitutional Custom, Policy and Practice and the Failure to Supervise and Train Related to Unlawful Polygraph Tactics against Union and Police Chief Vaniska;

- Count 6: Failure to Supervise and Train Claim under the New Jersey Civil Rights Act Related to the Unconstitutional Custom, Policy and Practice of Unlawful Polygraph Tactics against Union and Police Chief Vaniska.

## II. Legal Standard

To withstand a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*

"When reviewing a motion to dismiss, [a]ll allegations in the complaint must be accepted as true, and the plaintiff must be given the benefit of every favorable inference to be drawn therefrom." *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011) (internal quotation marks omitted). But the court need not accept "legal conclusions" as true. *Iqbal,* 556 U.S. at 678. And "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

Finally, "[i]n deciding a Rule 12(b)(6) motion, a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick,* 605 F.3d 223, 230 (3d Cir. 2010).

## III. Analysis

The Union Defendants advance several arguments in support of their motion to dismiss. *First*, they argue that Mervilus's Amended Complaint violates Federal Rules of Civil Procedure 8(a) and (d) because it is "neither concise nor plain" and replete with legal conclusions. (*See* D.E.

No. 100-2 ("Def. Mov. Br.") at 7-9). *Second*, they argue that the Eleventh Amendment bars Mervilus's claims against the Individual Union Defendants. (*See id.* at 10-20). *Third*, they argue that the doctrine of witness immunity bars Mervilus's claims against Kaminskas. (*See id.* at 22-24). *Fourth*, they argue that Mervilus fails to state *Monell* claims against Union and Vaniska. (*See id.* at 20-21). The Court will address each argument in turn.

**A. Union Defendants**

Although the Court agrees with the Union Defendants that Mervilus's Amended Complaint is long (*see id.* at 7-9), the Court does not find that the Amended Complaint violates Rule 8. In fact, the Court finds that the Amended Complaint is—for the most part—comprehensive and specific.

The Union Defendants criticize the Amended Complaint for containing "material obtained via website," "studies or academic papers," and "newspaper articles" (*id.* at 7), but cite no authority to suggest those references are improper. The Union Defendants also characterize the Amended Complaint as "fraught with a myriad of unsupported legal conclusions." (*Id.* at 8). But as the Union Defendants acknowledge, the Court may disregard any legal conclusions when assessing a Rule 12(b)(6) motion. (*See id.* at 12) (citing *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009)). Finally, because the Court is unpersuaded by the Union Defendants' arguments under Rule 8, it need not address whether amendment would be futile. (*See* Def. Mov. Br. at 10).

**B. Individual Union Defendants**

**i. Sovereign Immunity under the Eleventh Amendment**

The Union Defendants argue that the Eleventh Amendment shields the Individual Union Defendants from liability because, at all relevant times, they were acting in their official capacity. (*Id.* at 13-14). Although the Union Defendants acknowledge that Mervilus sued them in their

individual capacity, they argue that, "but for their employment as government employees, they would not have been involved in the criminal prosecution of' Mervilus. (*Id.*).

The Court is unpersuaded. Both the Supreme Court and Third Circuit have rejected this argument. *See Hafer v. Melo*, 502 U.S. 21, 30-31 (1991) ("[T]he Eleventh Amendment does not erect a barrier against suits to impose 'individual and personal liability' on state officials under § 1983."); *Munchinski v. Soloman*, 618 F. App'x 150, 156 (3d Cir. 2015) ("The Eleventh Amendment does not, however, bar suits against officials in their individual capacities, even if the actions that are the subject of the suit were part of the officials' governmental duties."); *Slinger v. New Jersey*, 366 F. App'x 357, 360 (3d Cir. 2010) (reversing district court determination that law enforcement officials were "entitled to Eleventh Amendment immunity when sued in their individual capacities because the claims against them arose from their performance of their official law enforcement duties").[2]

Indeed, as the Supreme Court explained in *Hafer*, "the distinction between official-capacity suits and personal-capacity suits is more than a mere pleading device." 502 U.S. at 28 (citation and internal quotation omitted). That is because "[s]tate officers sued for damages in their official capacity are not 'persons' for purposes of the suit because they assume the identity of the government that employs them. By contrast, officers sued in their personal capacity come to court as individuals." *Id.* (citations omitted).

The Court therefore rejects the Union Defendants' argument that the Individual Union Defendants are entitled to sovereign immunity under the Eleventh Amendment in this context.[3]

---

2 Plaintiff cites these authorities in his opposition brief (*see* D.E. No. 104 ("Pl. Opp. Br.") at 12-13), but the Union Defendants do not address them on reply.

3 The Union Defendants argue, for the first time on reply, that Kaminskas is also entitled to qualified immunity. (*See* D.E. No. 105 ("Def. Reply Br.") at 1-2) ("While not raised in the original brief in support of a motion to dismiss . . . the Court should consider that the [Kaminskas is] entitled to qualified immunity, in reaching its determination of

### ii. Witness Immunity

The Union Defendants argue that Kaminskas has absolute immunity because he appeared as a witness at Mervilus's trial. (*See* Def. Mov. Br. at 22-24). Plaintiff responds that "witness immunity does not protect Kaminskas for his unlawful investigation," including the allegedly unconstitutional polygraph examination. (Pl. Opp. Br. at 19, 23). The Union Defendants do not appear to respond to this argument on reply. (*See generally* Def. Reply Br. at 5-6).

"It is well-settled that witnesses are granted absolute immunity from suit for all testimony provided in judicial proceedings." *Spurlock v. Satterfield*, 167 F.3d 995, 1001 (6th Cir. 1999) (citing *Briscoe v. LaHue*, 460 U.S. 325, 330-31 (1983)). So the Court generally agrees with the Union Defendants that Kaminskas would likely "be insulated from liability for any testimony that he provided as a witness at trial, no matter how egregious or perjurious that testimony was alleged to have been." *Id.*

But Plaintiff is also correct that Kaminskas is likely not insulated from liability for certain non-testimonial pretrial conduct. *See id.*; *Paine v. City of Lompoc*, 265 F.3d 975, 981 (9th Cir. 2001) ("[Witness] immunity does not shield non-testimonial conduct."). The Supreme Court has articulated a "functional approach" to determine "whether the particular actions of government officials fit within a common-law tradition of absolute immunity" (such as witness immunity), "or only the more general standard of qualified immunity." *Buckley v. Fitzsimmons*, 509 U.S. 259, 269 (1995). Under *Buckley*, "those functions more 'investigative' in nature—searching for 'clues and corroboration'—are more removed from the judicial process" and not entitled to absolute

---

the pending Motion."). The Court declines at this time to entertain the Union Defendants' untimely argument. *See Dana Transp., Inc. v. Ableco Finance, LLC*, No. 04-2781, 2005 WL 2000152, at *6 (D.N.J. Aug. 17, 2005) ("The arguments raised for the first time in defendant's reply brief will be disregarded for purposes of this motion.").

immunity. *Gregory v. City of Louisville*, 444 F.3d 725, 738 (6th Cir. 2006) (quoting *Buckley*, 509 U.S. at 273).

Plaintiff alleges that Kaminskas committed unconstitutional "non-testimonial acts," including "fabricat[ing] evidence by the improper administration of a polygraph exam." (Pl. Opp. Br. at 18). This kind of conduct appears to fall outside the scope of absolute witness immunity. *See, e.g., Moldowan v. City of Warren*, 578 F.3d 351, 390 n. 21 (6th Cir. 2009) ("Subsequent testimony cannot insulate previous fabrications of evidence merely because the testimony relies on that fabricated evidence."); *Paine*, 265 F.3d at 981 (explaining that absolute witness immunity does not extend to "non-testimonial acts such as fabricating evidence"). And to be sure, "[t]he simple fact that acts may ultimately lead to witness testimony does not serve to cloak these actions with absolute testimonial immunity." *Spurlock*, 167 F.3d at 1001.

**C. *Monell* Claims against Union and Vaniska**

The Union Defendants' argument regarding Plaintiff's *Monell* claims is brief and undeveloped. *First*, they acknowledge that "the Eleventh Amendment does not protect county governments from § 1983 liability" and that the Supreme Court's *Monell* decision governs Plaintiff's claims against Union and Vaniska. (Def. Mov. Br. at 21) (citing *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978)). *Second*, they argue that, "[w]here defendants acted pursuant to 'executing their sworn duties to enforce the law by making use of all the tools lawfully available to them to combat crime,' [Union] cannot be held vicariously liable for any claims arising therefrom." (*Id.*) (quoting *Michaels v. State*, 968 F. Supp. 230, 233 (D.N.J. 1997)). The Union Defendants do not address Plaintiff's *Monell* claims on reply.

On a Rule 12(b)(6) motion, the "defendant bears the burden of showing that no claim has been presented." *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005). Put simply, the

Union Defendants have not carried their burden here. *See Grieco v. Lanigan*, No. 15-7881, 2016 WL 3450808, at *6-7 (D.N.J. June 17, 2016) (denying motion to dismiss *Monell* claim where defendants failed to address the appropriate standard and elements); *Ford v. Cty. of Mercer*, No. 14-0648, 2016 WL 781877, at *9 (D.N.J. Feb. 29, 2016) (same). For instance, the Union Defendants do not address Plaintiff's allegations that an official policy or custom involving polygraph examinations violated his constitutional rights. *See Ford*, 2016 WL 781877, at *9 ("The Court also declines to dismiss the *Monell* claim based on failure to train because the County Defendants have not carried their burden to show that Plaintiffs fail to state a claim for relief based on either a pattern of violations or a single incident theory of liability."). And the Union Defendants' reliance on *Michaels* is inapposite because the plaintiff in that case did not allege a *Monell* claim. *See Michaels*, 968 F. Supp. at 233-34 ("Here, Michaels does not even allege that her constitutional rights were violated by any official policy enacted by the County and, instead, relies solely on the doctrine of respondeat superior."). Thus, the Court finds the Union Defendants' arguments insufficient to carry their burden on a Rule 12(b)(6) motion.

## IV. CONCLUSION

For these reasons, the Union Defendants' motion is DENIED. An appropriate Order accompanies this Opinion.

*s/Esther Salas*
**Esther Salas, U.S.D.J.**