Not for Publication

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| EMMANUEL MERVILUS, | |
| Plaintiff, | Civil Action No. 14-7470 (ES) (MAH) |
| v. | OPINION |
| UNION COUNTY, et al., | |
| Defendants. | |

**SALAS, DISTRICT JUDGE**

Before the Court is Defendant Robert Perez's Motion for Summary Judgment filed on March 9, 2018. (D.E. No. 129). There was no oral argument, pursuant to Local Civil Rule 78.1(b). The Court has carefully reviewed the Motion, the materials filed in support and opposition, and the record in this case. For the reasons set forth below, the Motion is GRANTED.

**I.    Background**

**A.  Facts**

This is a Section 1983 case that challenges the photo identification and polygraph procedures used to convict Plaintiff Emmanuel Mervilus ("Plaintiff") in a state-court trial for robbery, aggravated assault, and possession of a weapon. After Plaintiff's conviction was overturned by the Appellate Division based on the improper use of polygraph testimony, Plaintiff was retried and acquitted. (D.E. No. 129-3 ¶ 20; D.E. No. 136-9 ¶ 20). Plaintiff then brought this action for violation of his constitutional rights during the first trial.

The undisputed facts underlying Plaintiff's claims are as follows: On October 19, 2006, at approximately 12:45 a.m., Plaintiff was walking down Morris Avenue in Elizabeth, New Jersey,

to meet a female friend.  (D.E. No. 129-3 ¶ 2; D.E. No. 136-9 ¶ 2; D.E. No. 129-7 at 46–49).  While he was walking, he ran into an acquaintance, Daniel Desire.  (D.E. No. 129-7 at 48–49).  The two stopped at a Dunkin' Donuts, and Plaintiff got in line to purchase juice.  (D.E. No. 129-3 ¶ 3; D.E. No. 129-7 at 48–50; D.E. No. 136-3 at 2).  After Plaintiff exited the Dunkin' Donuts, he saw a Hispanic male, later identified as the victim Manuel Abreu ("Abreu"), run into the street to intercept a police vehicle on patrol.  (D.E. No. 129-3 ¶¶ 3–4; D.E. No. 129-7 at 50–52 & 55; D.E. No. 136-9 ¶¶ 3–4).

According to the police report, Abreu told the officers in the police vehicle, Officers Edward Benenati and Michael Barros, that he had just been stabbed and pointed out Plaintiff and Desire, who were approximately 300 to 400 feet away, as his assailants.  (D.E. No. 129-3 ¶ 5; D.E. No. 129-7 at 67; D.E. No. 129-8 at 16 & 27; D.E. No. 136-3 at 1 & 3; D.E. No. 136-9 ¶ 5).  Benenati and Barros ran over to Plaintiff and Desire, searched them, and arrested them both.  (D.E. No. 129-3 ¶ 8; D.E. No. 129-8 at 16; D.E. No. 136-9 ¶ 8).  A camouflage foldable knife was found near the arrest.  (D.E. No. 129-3 ¶ 9; D.E. No. 129-7 at 62-63; D.E. No. 136-9 ¶ 9).

The next day Defendant Robert Perez, a detective with the Elizabeth Police Department, was assigned the case by his sergeant and received the "investigation file" which included a copy of the police report and printed "mug-shot" photos of Plaintiff and Desire.  (D.E. No. 129-3 ¶ 13; D.E. No. 136-9 ¶ 13; D.E. No. 129-10 at 70; D.E. No. 136-5 at 70).  Perez then separately interviewed Plaintiff and Desire who were in custody.  (D.E. No. 129-10 at 28–29; D.E. No. 136-3 at 2).  Plaintiff waived his *Miranda* rights and gave a statement to Perez denying involvement in the crime.  (*Id.*).  Desire requested a lawyer.  (*Id.*).

Seven days later, Perez interviewed Abreu.  (D.E. Nos. 129-3 ¶ 15; D.E. No. 136-9; D.E. No. ¶ 15; D.E. No. 136-5 at 35).  Perez took Abreu's statement in Spanish and summarized it in

English with the assistance of a bilingual typist. (D.E. No. 126-6 at 36–37). According to Perez, Perez never saw Plaintiff's "mug-shot" photographs included in the investigation file (D.E. No. 129-10 at 69) and never showed Abreu any photos of Plaintiff (*id.* at 70).

Plaintiff was eventually indicted on charges of robbery in the first degree pursuant to NJSA 2C:12-1(b)(1), aggravated assault in the second degree pursuant to NJSA 2C:12-1 (b)(2), aggravated assault in the third degree pursuant to NJSA 2C:39-4(d), and possession of a weapon for unlawful purpose in the third degree. (D.E. No. 129-3 ¶¶ 10 & 18; D.E. No. 136-9 ¶¶ 10 & 18). Prior to his first trial, Plaintiff's request for a *Wade* hearing challenging Abreu's identification of Plaintiff and Desire the night of the incident was denied. (*Id.* ¶ 19). Plaintiff proceeded to trial.

At the first trial, Abreu was unable to identify Plaintiff as his assailant and instead identified a spectator. (D.E. No. 129-14 at 41; D.E. No. 136-6 at 41). To rehabilitate Abreu, the prosecution showed Abreu a photo of Plaintiff. Abreu testified that that photo "look[ed] like" the one that had been shown to him when he was interviewed after the incident. (D.E. No. 129-14 at 41; D.E. No. 136-6 at 41). This was the first time counsel for Plaintiff learned that Abreu was shown photographs of Plaintiff and Desire. (D.E. No. 136 at 9).

On further examination at trial, Abreu testified that an unidentified detective whom he believed was named "Robert" or "Rober" showed Abreu photos of Plaintiff, after which Abreu was able to provide a description of the Plaintiff as his assailant. (D.E. No. 136-6 at 42 & 79). Abreu testified that he was shown four photographs, a forward-facing and profile photo of Plaintiff, and a forward-facing and profile photo of Desire. (*Id.* at 84).

In response to this testimony, Perez testified that no other officer was present during the interview of Abreu, but that he did not know whether anyone else at the police department ever spoke to Abreu or showed him any photos. (D.E. No. 126-6 at 36–37; D.E. No. 136-5 at 36–37).

Perez further testified that no photo identification was necessary given the on-scene identification, but pursuant to police department policy only Perez would have conducted a photo identification should one have been necessary. (D.E. No. 136-5 at 36).

**B. Procedural History**

Plaintiff initially filed his complaint (D.E. No. 1) on November 26, 2014, against Union County, the City of Elizabeth, the New Jersey Attorney General, and various individuals associated with the Union County Prosecutor's Office and the Police Department of both Union County and the City of Elizabeth. The complaint contained a total of 21 counts alleging violations of 42 U.S.C. § 1983 and the New Jersey Civil Rights Act, N.J.S.A. § 10:6-1, *et seq.* After motion practice as to some of the defendants, Plaintiff filed his operative complaint (D.E. No. 77 ("Amended Complaint")), on October 15, 2016, which narrowed named defendants and claims.

In the Amended Complaint, Plaintiff alleges violations of 42 U.S.C. § 1983 and the New Jersey Civil Rights Act, N.J.S.A. §§ 10:6-1, *et seq.*, against three Elizabeth Police Department Officers: the two arresting officers, Benenati and Barros, and Detective Perez. All three officers moved for summary judgment.

On March 23, 2018, the parties filed a Stipulation of Discontinuance voluntarily dismissing Officers Barros and Benenati. The Court accordingly denied Officer Barros and Berenati's pending motions for summary judgment (D.E. Nos. 126 & 127) as moot. Now before the Court is the sole remaining motion for summary judgment filed by Officer Perez. (D.E. No. 129).

**C. The Instant Motion**

Defendant Perez moves for summary judgment on all six claims against him. (D.E. No. 129). In opposition to the Motion, Plaintiff voluntarily dismisses all remaining counts against Perez except for his constitutional and NJCRA due process claims related to the allegedly unlawful

photo identification procedure, Counts XII and XIV. Accordingly, the Court will address only these remaining claims.

In his Motion, Defendant Perez first argues that he is entitled to qualified immunity because there is no genuine issue of material fact as to whether his conduct during the allegedly improper photo identification violated a clearly established constitutional right. (D.E. No. 129-4 at 4). Specifically, Perez makes two arguments in the alternative. First, he argues that while he did interview Abreu seven days after the incident, it is undisputed that Perez never showed Abreu a photograph of Plaintiff for identification. Secondly, Perez argues that, even if Perez did show Abreu a single photograph of Plaintiff, the photo identification could not have been unconstitutionally suggestive because it occurred after Abreu had identified Plaintiff at the scene of the crime. Separately, Perez argues that Plaintiff's claims regarding the photo identification procedure are barred by collateral estoppel based on decisions by the trial court in 2008 and the appeals court in 2011.

In opposition, Plaintiff argues that genuine issues of fact preclude summary judgment because Abreu testified he was shown a photograph of Plaintiff by someone named Detective "Robert" or "Rober" while at the police station, and Officer Robert Perez testified he was the only officer who would have performed any photo identification. Thus, while Abreu cannot identify Perez as the officer that showed him the photo, taking the facts in the light most favorable to Plaintiff summary judgment must be denied because there is a material issue of fact as to whether Defendant Perez performed an unconstitutional photo identification which was later used to rehabilitate Abreu at trial when he failed to identify Plaintiff as his assailant. (D.E. No. 136 at 5–6). Plaintiff further argues that Defendant is not entitled to qualified immunity because the photo procedure as testified to by Mr. Abreu violated a clearly established right. In response to

Defendant's argument that Plaintiff's challenge to the photo identification procedure is precluded by collateral estoppel, Plaintiff argues that the state trial and appellate courts never opined on the photo identification procedure at issue. (*Id.* at 8–9).

**II.     Legal Standard**

Summary Judgment is appropriate if "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. A fact is material if its determination might affect the outcome of the suit under the applicable substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49 (1986). A dispute is genuine if "a reasonable jury could return a verdict for the nonmoving party." *Id.* The Court views the facts in the light most favorable to the nonmovant and all reasonable inferences must be drawn in the movant's favor. *Intervest, Inc. v. Bloomberg, L.P.*, 340 F.3d 144, 159–60 (3d Cir. 2003). Matters of credibility are left to the jury. *Josey v. Hollingsworth Corp.*, 996 F.2d 632 (3d Cir. 1993).

The moving party bears the burden of demonstrating the absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The movant meets this burden by pointing to an absence of evidence supporting an essential element as to which the non-moving party will bear the burden of proof at trial. *Id.* at 325. If the moving party carries this initial burden, "the nonmoving party must come forward with specific facts showing that there is a genuine issue for trial." *United States v. Donovan*, 661 F.3d 174, 185 (3d Cir. 2011) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986) (internal quotation marks omitted)).

**III.    Analysis**

**A. Qualified Immunity**

Qualified immunity insulates government officials from the burdens of litigation and civil liability. *Walter v. Pike County, Pa.*, 544 F.3d 182, 190 (3d Cir. 2008). To assess whether

qualified immunity is warranted, the Court engages in a two-part inquiry. *Forbes v. Twp. of Lower Merion*, 313 F.3d 144, 148 (3d Cir. 2002). First, the Court examines whether the officer violated a constitutional right. *Id.*; *see also Saucier v. Katz*, 533 U.S. 194, 201–02 (2001). Second, the Court examines whether that right was "clearly established." *Saucier*, 533 U.S. at 201.

A right is clearly established for purposes of qualified immunity if a reasonable state actor under the circumstances would understand that his conduct violates that right. *Williams v. Bitner*, 455 F.3d 186, 190 (3d Cir. 2006) (citing *Saucier*, 533 U.S. at 202). Thus "the right allegedly violated must be defined at the appropriate level of specificity." *Wilson v. Layne*, 526 U.S. 603, 615 (1999). While there is no requirement that the "very action in question has previously been held unlawful," *Wilson*, 455 F.3d at 191 (quoting *Hope v. Pelzer*, 536 U.S. 730, 741 (2002)), "existing precedent must have placed the statutory or constitutional question beyond debate." *Carroll v. Carman*, 135 S. Ct. 348, 350 (2014) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011)). Accordingly, while "a qualified immunity defense does not demand that there had been a precise preview of the applicable legal analysis underlying the defense; what is required is that government officials have 'fair and clear warning' that their conduct is unlawful." *Halsey*, 750 F.3d at 295 (citation omitted)). "This doctrine gives government officials breathing room to make reasonable but mistaken judgments, and protects all but the plainly incompetent or those who knowingly violate the law." *Carroll*, 135 S. Ct. at 350 (quoting *al-Kidd*, 563 U.S. at 741). Thus, qualified immunity attaches if reasonably competent officers could disagree on the constitutionality of the conduct. *Malley v. Briggs*, 475 U.S. 335, 341 (1986).

The district court may address the "constitutional" or the "clearly established" prongs in either order, and need not address whether the conduct violated a constitutional right if it is apparent that the right in question was not clearly established at the time of the officer's conduct.

*Pearson v. Callahan*, 555 U.S. 223, 239–40 (2009). In conducting this analysis, the burden of demonstrating qualified immunity rests on the defendant. *Halsey*, 750 F.3d at 287–88.

### B. Section 1983 and the Photo Identification

Section 1983 provides a civil remedy for the "deprivation of any rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983. A plaintiff states a Section 1983 claim by demonstrating that a person acting under color of state law has deprived him of a federal right. *Halsey*, 750 F.3d at 290 (quoting *Gomez v. Toledo*, 446 U.S. 635, 640 (1980)).

A defendant has a due process right to a fair trial, and the guarantee of due process of law protects defendants both during and after their criminal proceedings. *Id.* at 291; *Stepp v. Mangold*, No. 94-2108, 1998 WL 309921, at *7 (E.D. Pa. June 10, 1998). With regard to eyewitness identifications, in 1968 the Supreme Court observed:

> It must be recognized that improper employment of photographs by police may sometimes cause witnesses to err in identifying criminals. A witness may have obtained only a brief glimpse of a criminal, or may have seen him under poor conditions. Even if the police subsequently follow the most correct photographic identification procedures and show him the pictures of a number of individuals without indicating whom they suspect, there is some danger that the witness may make an incorrect identification. This danger will be increased if the police display to the witness only the picture of a single individual who generally resembles the person he saw, or if they show him the pictures of several persons among which the photograph of a single such individual recurs or is in some way emphasized. The chance of misidentification is also heightened if the police indicate to the witness that they have other evidence that one of the persons pictured committed the crime. Regardless of how the initial misidentification comes about, the witness thereafter is apt to retain in his memory the image of the photograph rather than of the person actually seen, reducing the trustworthiness of subsequent lineup or courtroom identification.

*Simmons v. United States*, 390 U.S. 377, 383–84 (1968). Thus "eyewitness testimony will be permitted unless the pretrial identification procedure was so unnecessarily suggestive as to give

rise to a substantial likelihood of irreparable misidentification that admitting the identification testimony would be a denial of due process." *United States v. Clausen*, 328 F.3d 708, 713 (3d Cir. 2003). An identification procedure, including showing a witness a photo or a photo array, violates due process if it "is both (1) unnecessarily suggestive and (2) creates a substantial risk of misidentification . . . ." *United States v. Brownlee*, 454 F.3d 131, 137 (3d Cir. 2006) (citing *Manson v. Brathwaite*, 432 U.S. 98, 107 (1977)).

A photographic identification procedure can meet these factors when the officers create circumstances surrounding the identification procedure that "unduly suggest who[m] an identifying witness should select." *United States v. Lawrence*, 349 F.3d 109, 115 (3d Cir. 2003) (citing *Simmons*, 390 U.S. at 383). Accordingly, photo identifications where only one photograph is shown to an eyewitness are treated with particular care. In fact, courts have opined that "[i]t is well established that 'the display of pictures of (the suspect) alone (is) the most suggestive and therefore the most objectionable method of pre-trial identification.' " *Israel v. Odom*, 521 F.2d 1370, 1373–74 (7th Cir. 1975) (quoting *Kimbrough v. Cox*, 444 F.2d 9, 10 (4th Cir. 1971)); *United States v. Patterson*, 20 F.3d 801, 806 (8th Cir. 1994) ("Single-photograph displays such as the ones employed in the present case are considered impermissibly suggestive by this court.").

The procedure does not violate due process, however, when under the totality of the circumstances there are indicia of reliability as to the identification. Courts have thus found the concerns raised by single photo identification are cured when the identification is performed by a trained undercover officer, or by an acquaintance who knew of the suspect before the incident, or by witnesses who had a substantial opportunity to observe the suspect. *See e.g.*, *Manson*, 432 U.S. 98, 99 (1977) (finding identification by a trained undercover officer from a single photograph reliable under the totality of the circumstances); *Green v. City of Paterson*, 971 F. Supp. 891, 904

(D.N.J. 1997) (finding no substantial risk of misidentification when two eyewitnesses identified the alleged assailant by following him in their vehicle and later were shown a single photograph to confirm the identity of the alleged assailant); *see also Peterson v. Korobellis*, No. 09-6571, 2010 WL 5464205, at *7–8 (D.N.J. Dec. 28, 2010) (finding photo identification by a former girlfriend when only a single photo was presented was not unduly suggestive); *Burgos-Cintron v. Nyekan*, No. 09-4470, 2011 WL 4361601, at *7–8 (D.N.J. Sept. 19, 2011), *aff'd*, 510 F. App'x 157 (3d Cir. 2013) (finding single photo used to confirm victim's identification at the scene did not violate due process when witness stated that "I know them my whole life" and victim went to high school with the alleged perpetrator). With this framework in mind, the Court now turns to the instant Motion.

### C. Application

The record before the Court reflects conflicting factual accounts about whether a photo identification took place. Officer Robert Perez states that although he was given a copy of Plaintiff's mugshots in the investigative file, he never saw the photos and never showed them to Abreu. Abreu testified a detective named "Robert" or "Rober" showed him Plaintiff's mugshots after which Abreu was able to provide a description of the Plaintiff to investigators. Perez testified that he was the only detective who interviewed Abreu. Drawing all reasonable inferences in Plaintiff's favor, *InterVest, Inc. v. Bloomberg, L.P.*, 340 F.3d 144, 159–60 (3d Cir. 2003), the Court finds there is a genuine issue of fact as to whether Perez showed Abreu a mugshot of Plaintiff during the interview.

The question is, however, whether this genuine issue of fact is material to Plaintiff's claims in this case. Assuming, without deciding, that Plaintiff's version of the photo identification procedure occurred and such procedure violated Plaintiff's due process rights, Perez's actions must have violated a "clearly established" right for Plaintiff to avoid summary judgment.

Upon review of the authority at the time of the identification procedure in question, the Court concludes that the alleged actions of Officer Perez, even if unconstitutional, did not violate a "clearly established right." Assuming the photograph procedure occurred, Perez showed the victim, who had already identified Plaintiff on the street at the time of the incident, a mugshot to confirm Plaintiff's identity. This procedure, after a positive identification at the time of the incident, does not violate a clearly established right. *Newman v. Attorney Gen. of N.J.*, No. 16-3396, 2017 WL 2200905, at *3 (D.N.J. May 19, 2017) (noting that "*Burgos–Cintron* stands for the proposition that a photo identification cannot be 'suggestive' if the witness has already identified the perpetrator" (citing 510 F. App'x 157 (3d Cir. 2013))).

Plaintiff argues that the cases relied upon by Defendant are distinguishable because they approve of a photo identification using a single photograph where the witness knew or "got a good look at" the victim. (*See* D.E. No. 136 at 6–7); *see also Burgos-Cintron*, 510 F. App'x at 161. That may be so. But they fulfill Defendant's burden to demonstrate that Perez did not have a "fair and clear warning" that a "confirming" photo identification comprised of a single photo after a positive identification at the scene violated a "clearly established right." *Green*, 971 F. Supp. at 904; *Newman*, 2017 WL 2200905, at *3. Accordingly, Perez is entitled to qualified immunity.

## IV. Conclusion

For the forgoing reasons, Defendant Perez's Motion for Summary Judgment is GRANTED. The Court declines supplemental jurisdiction over the remaining state law claim against Perez. 28 U.S.C. § 1367(c)(3). An appropriate Order follows.

*s/Esther Salas*
**Esther Salas, U.S.D.J.**
